UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL T. ROBSON, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No.  4:19-cv-01862-SRC |
| | ) | |
| DUCKPOND LTD., et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

### Memorandum and Order

Before the Court is Plaintiff Michael T. Robson's [65] Motion to Strike the Supplemental Report of Expert H. Bryan Callahan.  The Court grants the motion, in part, and denies it, in part.

**I.     Background**

Robson filed suit against Defendants Duckpond Ltd., Tharros Emporium Ltd., and ICC Global Investments Ltd. for breach of contract.  Doc. 1.  Robson seeks to enforce a promissory note for Defendants' purchase of his stock in Duckpond, an investment company.  Defendants filed a counterclaim against Robson, asserting fraud, breach of fiduciary duty, and breach of the duty of loyalty.  Doc. 25.  Defendants allege that Robson did not properly calculate his stock purchase price under the Duckpond Shareholders' Agreement.  Specifically, Defendants claim that Robson manipulated the calculations to inflate the purchase price for his stock, and that he falsely represented that he calculated the purchase price according to Generally Accepted Accounting Principles.  Robson has argued throughout most of this litigation that the purchase price need not comply with GAAP, but his expert recently opined that the purchase price in fact complies with GAAP in some respects, bringing about the present dispute.

On August 17, 2020, the Court entered an Amended Case Management Order, setting the following deadlines for expert discovery:

(a) Plaintiff shall disclose all expert witnesses and shall provide the reports required by Fed. R. Civ. P. 26(a)(2), no later than **September 4, 2020**, shall make expert witnesses available for depositions, and have depositions completed, no later than **September 25, 2020**.

(b) Defendant shall disclose all expert witnesses and shall provide the reports required by Fed. R. Civ. P. 26(a)(2), no later than **October 16, 2020**, shall make expert witnesses available for depositions, and have depositions completed, no later than **November 6, 2020**.

(c) Parties shall disclose any rebuttal expert witnesses and shall provide the reports required by Fed. R. Civ. P. 26(a)(2), no later than **November 27, 2020**, shall make rebuttal expert witnesses available for depositions, and have depositions completed, no later than **December 11, 2020**.

. . .

(e) All discovery shall be completed no later than **December 21, 2020**.

Doc. 56 (emphasis in original). In September 2020, the parties agreed to extend Defendants' deadline for disclosing experts to November 3, and Defendants' deadline for producing experts for deposition to November 13. Doc. 66 at p. 3. The parties also extended Robson's rebuttal expert disclosure deadline to December 11 and the deadline to produce rebuttal experts for deposition to December 21, the same date as the discovery deadline in the Amended Case Management Order. *Id.*; *see also* Doc. 56.

In accordance with the parties' extended deadlines, Defendants disclosed H. Bryan Callahan as an expert and produced his report on November 3, 2020. 66-1. Callahan gave his deposition on November 17, 2020. Doc. 66-2. In his report and deposition, Callahan opines that Defendants paid too much for Robson's Duckpond stock because Robson's calculations did not consolidate the entity 301 Memorial, LLC. Doc. 66-1; Doc. 66-2. Callahan states that under GAAP, the stock price should have incorporated the consolidation of 301 Memorial under the

2

"Voting Interest" model. Doc. 66-2. At his deposition, Callahan testified that while preparing his report he spoke to Mark Jansen and Stacy Peter of RubinBrown LLP, the accounting firm that prepared Duckpond's FY2017 consolidated financial statements, which include 301 Memorial. *Id.*

In response, Robson disclosed rebuttal expert Thomas E. Hilton and produced his expert report on December 11, 2020. Doc. 66-3. Hilton gave his deposition on December 18, 2020. Hilton opines that an exception to the Voting Interest model applies in these circumstances, so the FY2017 consolidated financial statements should not have included 301 Memorial. *Id.* Hilton relies upon 301 Memorial's Operating Agreement and its "Majority Interest Consent" term, which required a 99.75% vote to take any action. *Id.* Hilton claims that the votes of Duckpond's subsidiary, ICC, Inc., which owns 99% of 301 Memorial, and three (of four) individuals, each owning 0.25%, are required to reach the 99.75% majority required by 301 Memorial's Operating Agreement. *Id.* As a result, Hilton concludes that ICC, Inc. did not have control over 301 Memorial under the Voting Interest model cited by Callahan. *Id.*

On December 21, 2020—the parties' agreed on deadline for rebuttal-expert depositions, and the deadline for all discovery in the CMO—Defendants produced a supplemental expert report for Callahan. Doc. 66-4. Due to Hilton's "identifying an exception [Callahan] did not consider necessary to address," as well as "new information" uncovered during the deposition of RubinBrown's corporate representative, Callahan supplemented his initial report "to provide clarification on [his] prior opinions regarding the consolidation of 301 Memorial into Duckpond as of March 31, 2017." *Id.* The supplemental report provides: (1) additional analysis for why the Voting Interest model still requires consolidation of 301 Memorial under GAAP, despite the exception provided by Hilton, and (2) another accounting standard that would also require

3

consolidation, the "Variable Interest Entity" model, which Callahan did not raise in his initial report or his deposition. *Id.*

Callahan claims that he did not previously list the full grounds for the 301 Memorial consolidation because he was unaware that Robson would argue that the stock purchase price is in any way GAAP compliant. *Id.* Callahan also states that he discovered new information through the deposition of RubinBrown's corporate representative, Mark Jansen, on November 19, 2020. *Id.* At his deposition, Jansen testified as a fact witness that the "Variable Interest Entity" model would require consolidating 301 Memorial's financials with Duckpond's FY2017 financial statements. *Id.* Callahan knew that RubinBrown conducted Duckpond's financial statement review in 2017 and that RubinBrown recommended consolidation of 301 Memorial's financials; he claims he did not know the specific rationale behind RubinBrown's recommendation until its November 19 deposition, when Robson asked specific questions on why RubinBrown recommended 301 Memorial's consolidation. *Id.* Callahan had already examined RubinBrown's FY2017 review report, but it did not contain a rationale for the 301 Memorial consolidation. *Id.* Callahan claims that he previously had no reason to ask RubinBrown why it recommended consolidation because he assumed that Robson did not dispute the 301 Memorial consolidation until he received Hilton's rebuttal report. *Id.*

Robson filed a Motion to Strike Callahan's Supplemental Report, or alternatively, a Motion for Leave to Depose and Rebut due to the new material in Callahan's supplemental report. Doc. 65. Robson argues that Callahan's supplemental report is untimely under the Judge's Requirements for supplemental expert reports and that it discloses new expert opinions rather than supplementing them under Rule 26(e)(2) of the Federal Rules of Civil Procedure.

## II. Discussion

### A. The Court's requirements

Robson argues that Callahan's supplemental report is untimely because Defendants filed it after Defendants' expert disclosure deadline on November 3, 2020. The Court disagrees. The Judge's Requirements allow experts to supplement their opinions until the end of expert discovery:

> Expert witnesses are limited to the opinions and bases for those opinions that they provided during the discovery period. The expert may testify about any opinion disclosed in either the report or the deposition, but *may not add reasons or authority for that opinion that were not disclosed in some way during discovery*. Unless unusual circumstances exist, the expert . . . *may not supplement or change their opinions after expert discovery has closed*, and the deadlines set out in the CMO trump any other deadlines in the rules or statutes.

(revised January 3, 2020) (emphasis added). The parties agreed to extend the rebuttal experts' deposition deadline to December 21, the same date as the discovery deadline. Defendants produced Callahan's supplemental report on December 21, 2020, the last day of expert discovery. Therefore, Defendants complied with the Judge's Requirements by filing Callahan's supplemental report by the close of expert discovery.

### B. Rule 26

Robson next argues that Callahan's supplemental report violates Rule 26(e) because: (1) it contains new opinions, and (2) Callahan did not receive new information that required supplementation. An expert's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B). And, "[i]t should be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." *Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 WL 4157163, at *4 (S.D.N.Y. 2007). "The purpose of

5

our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968).  To achieve these purposes, expert disclosures "must be sufficiently detailed and must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Davenport v. Charter Commc'ns, LLC*, 2016 WL 3743187, at *4 (E.D. Mo. 2016) (internal quotations omitted) (quoting *Finwall v. City of Chicago*, 239 F.R.D. 494, 501 (N.D. Ill. 2006)).  The Rule "prevents experts from 'lying in wait' to express new opinions at the last minute, thereby denying the opposing party the opportunity to depose the expert on the new information or closely examine the expert's new testimony." *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005).

      Rule 26(e)(1)(A) provides that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"  Parties may not supplement expert reports whenever they want, but "[t]he duty to supplement arises when the expert subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate." *McClurg v. Mallinckrodt, Inc.*, 2017 WL 3116138, at *3 (E.D. Mo. 2017) (quoting *Coene v. 3M Co.*, 303 F.R.D. 32, 42 (W.D.N.Y. 2014)).  Supplemental reports cannot disclose new opinions, however, because allowing supplementation "whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc [on] docket control and amount to unlimited expert opinion preparation." *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002).

### 1. Voting interest model

The Court first addresses Callahan's statements in his supplemental report about the Voting Interest model. Defendants state that Callahan's initial testimony applied the Voting Interest model as a general rule but did not analyze any exceptions to the rule because Defendants were unaware that Robson's expert would contest whether the purchase price was GAAP-compliant. Doc. 67. Defendants claim that Robson disclosed a new defense—that Robson's purchase price was still GAAP-compliant due to an exception to the Voting Interest mode—for the first time through his rebuttal expert. Defendants argue that Hilton's opinion that the purchase price was GAAP-compliant presented them with "new information [that] renders the earlier report incomplete or inaccurate," requiring clarification through a supplemental report. See *McClurg*, 2017 WL 3116138, at *3 (E.D. Mo. 2017).

Upon review, the Court concludes that the statements in Callahan's supplemental report are not based on "previously unknown or unavailable" information. Callahan explains in his supplemental report that he would "provide clarification on my prior opinions" in response to "Mr. Hilton's report identifying an exception I did not consider necessary to address." Doc. 66-4. Robson's rebuttal expert did not present Callahan with new information. Callahan simply did not believe he needed to elaborate on the Voting Interest model in his initial report.

Callahan's additional statements about the Voting Interest model do not alter his underlying methodology, so the Court believes that permitting a limited supplementation will best serve the purposes of Rule 26. See, e.g., *McClurg*, 2017 WL 3116138, at *3 (permitting supplemental report based on publicly-available information discovered during opposing expert's testimony because the supplemental report did not change the expert's underlying methodology and the Court had not set a trial date or deadline for pretrial disclosures yet);

7

*Coene*, 303 F.R.D. at 45 (refusing to impose the "harsh" remedy of excluding supplemental expert opinion disclosed well in advance of trial, notwithstanding a finding that the supplement was not truly a correction based on new information but was in fact a new opinion as to causation, issued after the depositions of both sides' experts).  In his initial expert report and his deposition, Callahan concludes that Duckpond's financial statements should have consolidated 301 Memorial based on its 99% ownership interest in 301 Memorial.  To the extent that Callahan's statements in the supplemental report differ from his initial expert report or deposition, "they merely expand upon or clarify an initial opinion that the [opposing party] had an opportunity to test during discovery." *Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc.*, 971 F. Supp. 2d 896, 903 (E.D. Mo. 2013).  They do not "express new or contradictory opinions that might prejudice the [opposing party]." *Id.*  Therefore, the Court denies Robson's motion to strike Callahan's supplemental report with regard to his statements about the Voting Interest model.

### 2. Variable Interest Entity model

Next the Court considers Callahan's statements about the Variable Interest Entity model in his supplemental report.  Defendants claim that the deposition of RubinBrown's corporate representative pointed Callahan to the Variable Interest Entity model as the reason RubinBrown consolidated 301 Memorial in Duckpond's financial statements.  Although Callahan had previously spoken to RubinBrown, he did not know its specific rationale for consolidation until the RubinBrown deposition, when Robson asked about the reason for consolidation and RubinBrown cited the Variable Interest Entity model.  Defendants state that Callahan had no reason to ask why RubinBrown recommended consolidation because Callahan did not know that Robson disputed the basis of consolidation before the disclosure of Hilton's report.  Defendants

8

argue that discovery of this information from third-party RubinBrown justifies supplementation. The Court disagrees.

Because RubinBrown's rationale for consolidating 301 Memorial was available to Callahan before Defendants disclosed his report, it is not "new information" that justifies a supplemental report. Callahan spoke to Jansen while preparing his opinions but opted not to pursue RubinBrown's rationale for consolidation. And even if RubinBrown's rationale was previously unknown to the Defendants, Callahan's report did not rely on RubinBrown's rationale for consolidation, so the information did not alter the accuracy or completeness of Callahan's initial report.

Callahan's statements about the Variable Interest Entity model constitute a new opinion; they do not clarify his initial report. Callahan explained why he added the information on the Variable Interest Entity model: "If the Court or fact finder finds that the voting interest model is unclear on consolidation of 301 Memorial, the variable interest entity model . . . provides additional clarity regarding consolidation." Doc. 66-4. But Callahan may not provide an alternative basis for his opinion through a supplemental report. *See McClurg*, 2017 WL 3116138, at *3. Information on the Variable Interest Entity model is a new opinion that did not appear in Callahan's original report, and Defendant's late disclosure prevented Robson from testing and rebutting the opinion during discovery. *See Wilson Rd. Dev. Corp., Inc.*, 971 F. Supp. 2d at 903. The Court grants Robson's motion to strike Callahan's supplemental report with regard to his opinions on the Variable Interest Entity model.

The Court denies Robson's Motion for Leave to Depose and Rebut, because Robson already examined Callahan on the applicability of the Voting Interest model to the consolidation of 301 Memorial. Callahan's further analysis of the Voting Interest model is not a new opinion

9

that warrants reopening discovery. *See Settles v. Livengood*, 2015 WL 2089222, at *1 (E.D. Mo. 2015) ("[A] party may conduct a second deposition of a witness if new information comes to light relating to the subject of that deposition, new parties are added to the case, new allegations are made in pleadings, or new documents are produced.").

Accordingly, the Court grants, in part, and denies, in part, Plaintiffs' [65] Motion to Strike the Supplemental Report of Expert H. Bryan Callahan. The Court strikes Callahan's supplemental report to the extent that it discusses the Variable Interest Entity model. The Court denies Robson's Motion for Leave to Depose and Rebut.

So Ordered this 24th day of February 2021.

*SL R. CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**